**UNITED STATES, Appellee,**

v.

**Rosemary M. MEDLEY, Sergeant, U.S. Air Force, Appellant.**

No. 64,801.

ACM 28012.

U.S. Court of Military Appeals.

Argued Jan. 10, 1991.

Decided Sept. 4, 1991.

For Appellant: *Captain Michael D. Burt* (argued); *Lieutenant Colonel Jeffrey R. Owens* (on brief); *Colonel Richard F. O'Hair.*

For Appellee: *Captain Ann M. Mittermeyer* (argued); *Lieutenant Colonel Brenda J. Hollis* and *Captain David G. Nix* (on brief); *Colonel Robert E. Giovagnoni.*

*Opinion of the Court*

COX, Judge:

Appellant stands convicted, contrary to her pleas, of three specifications of wrongfully using cocaine and one specification of being derelict in her duty to report cocaine use by other servicemembers, in violation of Articles 112a and 92, Uniform Code of Military Justice, 10 USC §§ 912a and 892, respectively.[1]

---

1. Appellant also was convicted of dereliction of duty by her failure to report marijuana use at one of the times and places she was convicted of cocaine use. Relying on our opinion in *United States v. Heyward,* 22 MJ 35 (CMA), *cert. denied,* 479 U.S. 1011, 107 S.Ct. 656, 93 L.Ed.2d 710 (1986), the Court of Military Review set aside that specification, ruling that

> it draws the line too finely to deny an accused the *"Heyward* defense" when he or she is using Drug A and subordinates are using Drug B. In our judgment, the *Heyward* defense is available to the appellant at this juncture.

30 MJ 879, 881 (1990), *citing Schlesinger v. Wisconsin,* 270 U.S. 230, 241, 46 S.Ct. 260, 262, 70 L.Ed. 557 (1926) (Holmes, J.).

The court-martial sentenced appellant to a bad-conduct discharge, confinement for 4 years, forfeiture of $600 pay per month for 4 years, and reduction to Airman Basic. The convening authority reduced the confinement and forfeitures to 2 years each, but otherwise approved the sentence. The Court of Military Review, reassessing the sentence after dismissing one specification (*see* above), reduced the confine-

The Government's evidence showed that appellant was present at a number of parties and social outings where illegal drugs were consumed. The military judge instructed the general court-martial members that appellant could not be convicted of failing to report her fellow servicemembers for any occasion on which she herself participated in the drug usage. *See United States v. Heyward,* 22 MJ 35 (CMA), *cert. denied,* 479 U.S. 1011, 107 S.Ct. 656, 93 L.Ed.2d 710 (1986); *United States v. Thompson,* 22 MJ 40 (CMA 1986). Concerning one of these drug events, the court-martial was convinced that she joined in using cocaine, so it acquitted her of the corresponding dereliction offense. Regarding another incident, the court-martial was satisfied that she was present, was aware of drug usage by the others but was not then using drugs herself, and failed to report the matter to proper authorities. Air Force Regulations 30–1, 30–2, and 39–6, as well as a custom of the service, require noncommissioned officers, among others, to report drug use that comes to their attention. *United States v. Medley,* 30 MJ 879, 880 n. 1 (AFCMR 1990).

In *Heyward* and *Thompson,* we made it clear that a servicemember cannot be convicted of both using drugs and failing to apprehend or report others joining him *in the same drug usage.* We held this dual penalty would violate a servicemember's rights against compulsory self-incrimination. Art. 31, UCMJ, 10 USC § 831; and U.S. Const. amend. V. We recognized, however:

> Due to contingencies of proof, *it may be warranted in some cases to charge an accused both with dereliction of duty for failure to report an offense and with the offense that he failed to report.* Nevertheless, we see no need to allow an accused to be convicted of both.

22 MJ at 37 (emphasis added).

Heyward, unlike appellant, was convicted of using illicit drugs and of failure to re-

port others' use at the same time and place. We held:

> The Government proved that on three occasions appellant was a principal to marijuana use by the same Air Force members that he failed to report. The Government also introduced evidence that appellant was present on two other occasions when marijuana was used but he did not partake himself. *Thus appellant could properly be convicted of both use of marijuana on three occasions and dereliction of duty for failure to report drug use by others on the two occasions when he was not involved as a principal.*

22 MJ at 38 (emphasis added).

In effect, appellant now asks us to modify the *Heyward* rule and extend it to the instant facts. As she did before the Court of Military Review, she contends that the dereliction charge should be dismissed due to the social relationship among her co-actors. Her contention, essentially, is that the on-going drug activities of her social circle were so interrelated that it would have been impossible for her to report one incident without potentially incriminating herself with respect to the other incidents. *See United States v. Brunton,* 24 MJ 566 (NMCMR 1987).

From a practical standpoint, her argument has some logic. An acknowledgment, without more, of a friendly association with drug users *might* suggest to the Government a link between her and drugs.[2] Furthermore, denouncing the others' use of drugs could, under some circumstances, establish her ability to recognize cocaine, prejudicing a claim of innocent ingestion. *See United States v. Mance,* 26 MJ 244 (CMA) (knowledge of illicit nature of substance is element of offense), *cert. denied,* 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988).[3] Primarily, however, the logic of

---

ment and forfeitures to 14 months each, but affirmed the discharge and the reduction.

2. It might equally suggest that she was a person who was willing to place duty above friendship.

3. However, since appellant's use convictions were based on testimony that she "snorted" a "white, powdery substance," the innocent-ingestion defense, in 1987 A.D., is quite academic.

the argument is that appellant might expect retaliation from her "friends" if she betrayed them. Thus, given her obvious vulnerability, appellant had little real incentive to inform on her friends.

However, the possibility of touching off a chain reaction that might come back to bite her is not the litmus test for self-incrimination. Where a reporting requirement calls for "a compelled disclosure that has an incriminating potential," resolution of the issue depends on "the str[ength of the] policies in favor of a disclosure called for by [the] statutes." *California v. Byers*, 402 U.S. 424, 427, 428, 91 S.Ct. 1535, 1537, 1538, 29 L.Ed.2d 9 (1971) (plurality opinion). *See United States v. Heyward, supra* at 37 (fact that "the information disclosed may focus attention on the reporting servicemember and may eventually lead to criminal charges being brought against him ... alone does not invalidate the reporting requirement"); *cf. United States v. Sievers*, 29 MJ 72 (CMA 1989).[4]

We must be careful in these cases not to overlook the military purpose of the duty to report drug offenses (or any offenses or negligent conduct, for that matter). Military leaders have a fundamental obligation to intervene and prevent criminal or negligent conduct. *See* RCM 302(b)(2), Manual for Courts–Martial, United States, 1984. While we have expressed our reluctance to permit the criminal prosecution of servicemembers who fail to carry out the physical arrest or apprehension of other servicemembers, our concerns were based primarily on the lack of training, experience in law enforcement, and definitive "notice" of what to do when, rather than on the proposition that there is no duty to act at all. *United States v. Thompson, supra* at 41; *see also United States v. Heyward, supra* at 38, 39 (Everett, C.J., concurring).

We have never intimated that it is lawful or excusable for a person in a position of military leadership to consciously ignore the blatant criminal conduct of subordinates. This classic duty not to tolerate malfeasance cuts to the very core of military leadership and responsibility. It is a duty with respect to others that clearly exceeds the duty of ordinary citizens. *Cf.* R. Perkins and R. Boyce, *Criminal Law* 742 (3d ed. 1982).

Thus, under the framework of *California v. Byers, supra*, we have no hesitation in validating appellant's duty to report her subordinates' criminal conduct, notwithstanding the fact that she was found to have joined them in crime on other occasions.[5] The policy basis for reporting misconduct in the military is more than powerful; it is axiomatic. On these facts, and in view of the adroit handling of the instructions by the military judge, we agree with the Court of Military Review, when it said:

> The "*Heyward* exception" is of no benefit to this appellant. She was convicted

---

4. Admittedly, the specifications as drafted were no models of clarity, spanning as they did lengthy and overlapping time frames. *See United States v. Reed*, 24 MJ 80, 83 (CMA 1987). The record of trial, however, reveals that each of the specifications of which appellant was convicted represented a different drug event, each at a different location. The defense was fully aware of which specification referenced which event, and there was no defense request for clarification. The court members were clearly apprised of both the nature of the allegations and the fact that appellant could not be convicted of failing to report drug offenses if she were a principal to that use. Thus, this case differs from *Reed* in two ways. First, unlike the military judge's providence inquiry in *Reed*, which convinced then-Judge Sullivan that the *Heyward* doctrine was "not satisfactorily resolve[d]," 24 MJ at 83, this case was litigated on

the merits, and the members were properly instructed.

Secondly, the Air Force Regulation, unlike the Navy Regulation in *Reed*, is not unduly broad. *United States v. Reed, supra* at 83–86 (Everett, C.J., concurring). *See United States v. Heyward, supra*.

5. We have not had occasion to decide whether, in the event the Government elects to prosecute a servicemember for offenses discovered subsequent to his obligatory report on others, "the Government's burden [would be] heavy in showing that the evidence later provided" against the accused was "not the product of" his report on others. *See United States v. Boyd*, 27 MJ 82, 86 (CMA 1988) (Everett, C.J., concurring). In the instant case, of course, appellant did not report on the others, so we are not confronted with this question.

of failing to report *only as to those occasions on which she herself did not use drugs*. In short, the *Heyward* exception is inoperative on the facts. 30 MJ at 880.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN, concurs.

EVERETT, Senior Judge (concurring):

The regulatory requirement of the various military departments that purports to place on *all* personnel the duty to report to higher authority any and all incidents of drug use by fellow servicemembers is troubling to me. For this reason, I wrote separately in *United States v. Heyward*, 22 MJ 35, 38 (CMA), *cert. denied*, 479 U.S. 1011, 107 S.Ct. 656, 93 L.Ed.2d 710 (1986), and later in *United States v. Reed*, 24 MJ 80, 83 (CMA 1987), in order to make clear my analysis of this alleged duty. I do so again here.

Air Force Regulation (AFR) 30–1, Personnel, Air Force Standards (4 May 1983), claims to impose a blanket drug-use reporting duty on all Air Force personnel. Paragraph 10b charges every airman, "You are responsible for (1) reporting all known or suspected incidents of drug abuse by others and (2) encouraging persons known to you to have an existing or potential drug abuse problem to seek assistance through the Air Force Rehabilitation Program." *See* para. 3–17, AFR 30–2 (18 April 1986). In regard to what offenses must be reported, this provision is more focused than the language of Article 1139 of U.S. Navy Regulations (1973) that was at issue in *Reed*. Thus, arguably it provides the constitutionally mandated notice that was missing there. *See* 24 MJ at 84 (Everett, C.J., concurring). Nonetheless, to me, it remains suspect in terms of notice because—as I discussed both in *Heyward* and in *Reed*—to the extent the reporting require-

ment would apply to even the lowest ranking member of the Air Force, it deviates greatly from the expectations of citizens generally at common law and in virtually all state jurisdictions.

Furthermore, again to the extent that this blanket regulatory provision purports to burden even the lowest ranking member of the service, I conclude that the " 'police state' " connotations of such an obligation render the provision too broad even considering "the interests of military necessity." *See United States v. Reed, supra* at 85.

Appellant, however, is *not* "the lowest ranking member of the" Air Force; she is a sergeant—a noncommissioned officer. As I implied in *Heyward* and in *Reed*, I believe that the military can expect its leadership, both commissioned and noncommissioned officers, to meet a higher level of responsibility than can logically or legally be imposed on the military's citizenry at large.

Moreover, at her court-martial, appellant stipulated to the following:

As a noncommissioned officer, the accused had a certain prescribed duty, that is, to report to proper military authorities the wrongful use of illegal drugs by persons subordinate in rank to the accused, and known to her to be members of the United States Air Force.

Thus, not only did "the Government ... prove that the Air Force intended that appellant, as a noncommissioned officer, have a duty to report drug use by others," but it also proved "that appellant knew ... that [s]he was subject to this duty." *See United States v. Heyward, supra* at 38 (Everett, C.J., concurring).

Accordingly, because appellant was part of the Air Force's leadership corps and because she knew that, as part of that corps, she had a duty to report to higher authority any drug use by others, I join the majority's opinion here.